UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GABRIELLE FRISCH,<br><br>     Plaintiff,<br><br> -against-<br><br>COHERUS BIOSCIENCES, INC.,<br><br>     Defendant. | **COMPLAINT**<br><br>**Civil Action No.:**<br><br>Jury Trial Demanded |

  GABRIELLE FRISCH ("Plaintiff"), by and through her attorneys, STEVENSON MARINO LLP, as and for his Complaint against COHERUS BIOSCIENCES, INC. ("Defendant" or "Coherus"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## NATURE OF THE CASE

  1. This is a civil action for damages and equitable relief based upon violations that Defendant committed of Plaintiff's rights guaranteed to her by: (i) the gender discrimination provisions of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C.A. § 2000e-2, 42 U.S.C.A. § 2000e(k); (ii) the gender/caregiver discrimination provisions of the NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a); (iii) the anti-retaliation provisions of the PDA, 42 U.S.C.A. § 2000e-3(a); (iv) the anti-retaliation provisions of the NYCHRL, N.Y.C. Admin. Code § 8-107(7); (v) the cooperative dialogue provisions of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(28); and (vi) any other claim(s) that can be inferred from the facts set forth herein.

2.      As described below, following Plaintiff's return form maternity leave, Defendant instituted a Covid-19 vaccine policy mandating Plaintiff to get vaccinated or face termination. Following Plaintiff's compliance by receiving the Covid-19 vaccination, Plaintiff requested an accommodation to continue to work remotely, and Defendant terminated her based upon her recent return from maternity leave and for making an accommodation request in violation of the PDA and the NYCHRL.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3.      On November 22, 2021, Plaintiff filed a Charge of Discrimination ("Charge") with the United States Equal Employment Opportunity Commission ("EEOC"), which was assigned EEOC Charge No.: 520-2022-01833.

4.      Thereafter, the EEOC issued a Notice of Right to Sue ("Notice") for Plaintiff, which Plaintiff received on July 28, 2022.

5.      Plaintiff has timely filed this Complaint within ninety days of receiving the Notice.

## JURISDICTION AND VENUE

6.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 2000, *et seq*. The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

7.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

8.      At all relevant times herein, Plaintiff worked for Defendant in New York, and was an "employee" entitled to protection as defined by the PDA and the NYCHRL.

9.     At all relevant times herein, Defendant was and is a California corporation with its principal place of business located at 333 Twin Dolphin Drive, Suite 600, Redwood City, California 94065. During the relevant period, Defendant employed at least fifteen employees and thus is an "employer" within the meaning of the PDA and the NYCHRL.

## BACKGROUND FACTS

10.     Coherus is a pharmaceutical company that sells biosimilar drugs to medical facilities, with its headquarters located at 333 Twin Dolphin Drive, Suite 600 Redwood City, California.

11.     On October 11, 2019, Plaintiff began her employment as an Oncology Account Manager at Coherus, performing the substantial majority of her duties in Manhattan, New York.

12.     During the second week of March 2020, Plaintiff's supervisor, Steve Spodick, directed Plaintiff to work remotely for the next two weeks as news of the Covid-19 outbreak in New York City was first breaking and Coherus was aware that Plaintiff was twelve weeks pregnant at that time.

13.     One week later, on or around March 16, 2020, Coherus officially announced that employees would be working remotely until further notice due to actions taken by local governments in response to emerging facts regarding the spread of the virus.

14.     On September 2, 2020, Plaintiff took maternity leave following the birth of her child and remained on leave until February 8, 2021, when she returned to her position.

15.     All Coherus employees continued to work remotely until Coherus late-March/early-April 2021, at which point Coherus required some employees to resume in-person job duties. Coherus highly encouraged all sales representatives to resume in-person meetings at

clinics and hospitals at this time, with weekly Covid-19 tests required for all field-based employees.

16.     From the beginning of her employment and continuing throughout her time working remotely, Plaintiff received numerous Field Coaching Reports and reviews from her manager that included her rankings as one of Coherus's top sales representatives.

17.     On April 20, 2021, Vice President of Human Resources, Rebecca Sunshine, sent an email to all Coherus employees directing all employees to communicate their vaccination status to Human Resources by April 23, 2021.

18.     On June 24, 2021, Coherus announced a new company policy mandating that all employees receive their first dose of the Covid-19 vaccine no later than July 19, 2021, or be subject to termination.

19.     On June 29, 2021, Plaintiff reached out to Charmi Turner in Human Resources to discuss Coherus's vaccine mandate. During this call, Plaintiff voiced her concern about receiving the vaccine while she was breastfeeding and additionally because her family plans included becoming pregnant again in the near future. Around this time, there was much information/misinformation being spread regarding the vaccine and its effect on infants and Plaintiff wanted to make sure she was making the correct decisions regarding her child's and family's health. Indeed, there were multiple articles published in news sources, including the New York Times, regarding the contradictory advice being offered by the United States Centers for Disease Control and Prevention ("CDC") and the World Health Organization. Plaintiff believed in good faith that taking the vaccine, while breastfeeding, might cause harm to the safety of her child and addressed this concern with Coherus.

20.     Specifically, on July 1, 2021, Ms. Sunshine held a telephone call with Plaintiff during which Plaintiff communicated to Ms. Sunshine both her concern about the vaccine in light of her current breastfeeding, as well as her intention to become pregnant again in the near future. Ms. Sunshine also informed Plaintiff on the call that Coherus intended to provide separation agreements to all employees that failed to receive vaccinations by July 19, 2021.

21.     On July 6, 2021, Ms. Sunshine held another telephone call with Plaintiff to confirm that Plaintiff would be receiving a separation agreement. Ms. Sunshine stated on the call that she believed that separation from Coherus was "probably best, because you may end up leaving anyways," referring to their earlier conversation regarding Plaintiff's stated intentions of becoming pregnant in the near future. Plaintiff was extremely offended by this comment, as she had no intention of resigning from her job and felt that the company was attempting to force her out based on the information that she provided about future pregnancy, exposing the company's discriminatory treatment of women and caregivers.

22.     On July 13, 2021, Coherus provided Plaintiff with a "Separation Agreement" stating that Plaintiff's last day of employment was August 15, 2021, and that Plaintiff needed to sign the agreement within eight (8) days in order to receive severance pay.

23.     Subsequent to receiving notice that Plaintiff hired counsel, on August 4, 2021, Coherus rescinded the Separation Agreement and stated that Plaintiff was in fact not terminated and that she remained a Coherus employee. Coherus further requested that Plaintiff fill out an accommodation request form, which it provided to her.

24.     On August 10, 2021, Coherus extended its vaccine mandate deadline for all employees to September 15, 2021.

25.     On August 11, 2021, the CDC recommended that pregnant and breastfeeding women be vaccinated against Covid-19.

26.     Almost immediately following the CDC's public announcement of its recommendation, on August 15, 2021, Plaintiff received her first dose of the Moderna vaccine.

27.     On September 9, 2021, during the resurgence of the Covid-19 pandemic due to the Delta Variant, at Coherus's request, Plaintiff engaged in protected activity by providing an accommodation request form seeking the following accommodation:

> Employee requests to work remotely based on the inability of her infant child to receive a vaccination, therefore subjecting her infant to potential breakthrough cases of the Covid-19 virus that the vaccination cannot fully prevent. Employee requests a three-month accommodation to work remotely, to be revisited in three months so the present state of the pandemic can be evaluated at that time, or the date in which the vaccine becomes available to children in my child's age bracket, whichever event occurs sooner.

28.     On September 10, 2021, at Coherus's request, Plaintiff provided Human Resources with a copy of her vaccination card to prove that she complied with Coherus's vaccine policy.

29.     On September 16, 2021, Coherus terminated Plaintiff's employment on the basis that it was not willing to accommodate her request. Prior to terminating her employment, Coherus never provided Plaintiff with the option of returning to work despite the fact that she complied with Coherus's policy by becoming vaccinated, instead terminating her on the basis of her gender and/or that she requested an accommodation.

30.     Although Plaintiff had every intention of returning to work in-person if Coherus denied her accommodation request to work remotely, Coherus never permitted her the opportunity as retaliation against her for seeking remote work as an accommodation in the first place.

31.     Despite Plaintiff being one of Coherus's top salespeople, Coherus's termination was unlawfully motivated by the knowledge of Plaintiff intending to become pregnant again in the

6

future and her attempts to work remotely based on her status as a caregiver, constituting a discriminatory policy towards women.

32.     On September 30, 2021, Coherus provided extended leave to Jim Anderson, a male employee in the same exact position as Plaintiff, despite the fact that Mr. Anderson never received his vaccination. Thus, Coherus thereby treated her less well than a male employee because of her gender and because she engaged in protected activity of requesting an accommodation.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANT
### *Gender Discrimination in Violation of the PDA*

33.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

34.     The PDA makes it unlawful for an employer to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to the employee's compensation, terms, conditions, or privileges of employment, because of such individual's sex.

35.     The PDA further defines "because of sex" and "on the basis of sex" as including, but not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes.

36.     As described above, Defendant is an employer within the meaning of the PDA, while Plaintiff is an employee within the meaning of the PDA.

37.     As also described above, Defendant discriminated against Plaintiff by discharging Plaintiff on the basis of her sex and otherwise discriminated against Plaintiff with respect to the conditions and privileges of Plaintiff's employment based on her sex.

38.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the PDA, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

39.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the PDA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

40.     Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of the PDA, for which Plaintiff is entitled to an award of punitive damages.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANT
### *Gender Discrimination in Violation of the NYCHRL*

41.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

42.     NYCHRL § 8-107 prohibits employers, because of an employee's gender or caregiver status, from discriminating against such individual with respect to compensation, terms, conditions, or privileges of employment.

43.     As described above, Defendant discriminated against Plaintiff by terminating Plaintiff on the basis of her gender or caregiver status, in violation of the NYCHRL.

44.     As also described above, Defendant is an employer within the meaning of the NYCHRL, while Plaintiff is an employee within the meaning of the NYCHRL.

45.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

46.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANT
*Retaliation in Violation of the PDA*

47.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

48.     The PDA prohibits employers from discriminating against an employee because the employee has in good faith opposed any practice made an unlawful employment practice under the PDA.

49.     As described above, Defendant is an employer within the meaning of the PDA, while Plaintiff is an employee within the meaning of the PDA.

50.     As also described above, after Plaintiff asserted a good faith complaint opposing Defendant's unlawful practices under the PDA, Defendant retaliated against Plaintiff by terminating Plaintiff's employment.

51.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the PDA, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

52.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the PDA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress

and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

53.     Defendant's unlawful retaliatory actions constitute malicious, willful, and wanton violations of the PDA, for which Plaintiff is entitled to an award of punitive damages.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Retaliation in Violation of the NYCHRL*

54.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

55.     NYCHRL § 8-107(7) prohibits an employer from retaliating against an employee who has in good faith opposed any practice forbidden by the NYCHRL.

56.      As described above, Defendant is an employer within the meaning of the NYCHRL, while Plaintiff is an employee within the meaning of the NYCHRL.

57.     As also described above, after Plaintiff engaged in activity protected under the NYCHRL, Defendant retaliated against Plaintiff by terminating Plaintiff's employment.

58.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic harm for which Plaintiff is entitled to an award of monetary damages and other relief.

59.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

60.     Defendant's unlawful actions were taken willfully and wantonly, and/or were so negligent and reckless and/or evidenced a conscious disregard of the rights of Plaintiff so that Plaintiff is entitled to an award of punitive damages.

### FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT
*Failure to Engage in Cooperative Dialogue in Violation of the NYCHRL*

61.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

62.     NYCHRL § 8-107(28) prohibits employers from refusing or otherwise failing to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the employer has notice may require such an accommodation related to a disability. NYCHRL §8-107(28) additionally requires that upon reaching a final determination at the conclusion of a cooperative dialogue, the employer shall provide an employee requesting an accommodation with a final written report.

63.     As described above, Defendant refused or otherwise failed to engage in a cooperative dialogue within a reasonable time of Plaintiff's request for an accommodation, which Plaintiff required based upon his disability, in violation of the NYCHRL.

64.     As also described above, Defendant failed to issue Plaintiff a final written report at the conclusion of the cooperative dialogue process, in violation of the NYCHRL.

65.     As also described above, Defendant is an employer within the meaning of the NYCHRL, while Plaintiff is an employee within the meaning of the NYCHRL.

66.     As a direct and proximate result of Defendant's failure to engage in a cooperative dialogue in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, economic loss, for which Plaintiff is entitled to an award of monetary damages and other relief.

67.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

## DEMAND FOR A JURY TRIAL

68.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

a.      A judgment declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

b.      An order granting preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with it, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

c.      An order restraining Defendant from any retaliation against Plaintiff for participation in any form in this litigation;

d.      An award of damages in an amount to be determined at trial to compensate Plaintiff for all monetary and/or economic damages in connection with Plaintiff's claims, whether legal or equitable in nature, including back pay, front pay, and any other damages for lost compensation or employee benefits that Plaintiff would have received but for Defendant's unlawful conduct;

      e.      An award of damages to be determined at trial to compensate Plaintiff for harm to Plaintiff's professional and personal reputations and loss of career fulfillment in connection with Plaintiff's claims;

      f.      An award of damages to be determined at trial to compensate Plaintiff for emotional distress and/or mental anguish in connection with Plaintiff's claims;

      g.      An award of punitive damages to the extent permitted by law, commensurate with Defendant's ability to pay;

      h.      An award to Plaintiff of reasonable attorneys' fees, as well as Plaintiff's costs and disbursements incurred in connection with this action, including expert witness fees and other costs;

      i.      An award of pre-judgment and post-judgment interest, as provided by law; and

      j.      Granting Plaintiff such other and further relief, including equitable relief, as this Court finds necessary and proper.

Dated: White Plains, New York
       August 24, 2022

Respectfully submitted,

STEVENSON MARINO LLP
*Attorneys for Plaintiff*
445 Hamilton Avenue, Suite 1500
White Plains, New York 10601
Tel.    (212) 939-7229
Fax.    (212) 531-6129

By:    _____
       JEFFREY R. MAGUIRE

13