UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
GABRIELLE FRISCH, :
:
Plaintiff, :
: 22-CV-7215 (VSB)
- against - :
: **OPINION & ORDER**
:
COHERUS BIOSCIENCES, INC., :
:
Defendant. :
:
------------------------------------------------------------X

Appearances:

John Russell Stevenson
Jeffrey Robert Maguire
Stevenson Marino LLP
White Plains, NY
*Counsel for Plaintiff*

Iman Wells
Ryan Stephen Carlson
Nukk-Freeman and Cerra, PC
Chatham, NJ
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

      Gabrielle Frisch brings this action against her former employer, Coherus Biosciences, Inc. ("Coherus"), asserting violations of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k), and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq.* Before me is Coherus's motion to dismiss Frisch's NYCHRL claims for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, for failure to state a claim under Federal Rule

of Civil Procedure 12(b)(6).  Because I conclude that I lack jurisdiction to hear Frisch's NYCHRL claims, Coherus's motion is GRANTED.

## I. Factual Background[1]

In October 2019, Gabrielle Frisch began working at Coherus—a pharmaceutical company that sells biosimilar drugs to medical facilities.[2]  (Compl. ¶¶ 10–11.)  Coherus is based out of California and does not have any offices outside that state.  (*Id.* ¶ 10; Sunshine Cert. ¶¶ 4–5.)[3]  Frisch, meanwhile, lives in New Jersey, where her home functioned as "her office and home base."  (Sunshine Cert. ¶ 8.)  Hired as an Oncology Account Manager, Frisch was responsible for selling Coherus's products to customers in northern New Jersey and, as especially relevant here, New York City.  (Compl. ¶ 11; Frisch Decl. ¶¶ 4–5.)  She reported to Steve Spodick, Senior Director, Regional Sales, who was based in New England.  (Compl. ¶ 12; Sunshine Decl. ¶ 10.)

For the first five months of her employment, Frisch performed the "substantial majority" of her duties in Manhattan, (Compl. ¶¶ 11–12), spending approximately ninety percent of her workweek in hospitals, clinics, and medical offices located throughout New York City, (Frisch Decl. ¶¶ 6–7).  That changed, however, in March 2020 when Spodick directed Frisch to work remotely for the next two weeks in response to the outbreak of the COVID-19 pandemic.

---

[1] The facts contained in this section are based upon the factual allegations set forth in the Complaint filed by plaintiff Gabrielle Frisch ("Frisch" or "Plaintiff"), (Doc. 1 ("Compl.")), and the Declaration of Gabrielle Frisch in Support of Plaintiff's Opposition to Defendant's Motion to Dismiss, including the exhibits attached thereto.  (Doc. 18 ("Frisch Declaration" or "Frisch Decl.").)  I assume the allegations in the Complaint to be true in considering the motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "A biosimilar is a biologic medication.  It is highly similar to a biologic medication already approved by FDA—the original biologic (also called the reference product).  Biosimilars also have no clinically meaningful differences from the reference product.  This means you can expect the same safety and effectiveness from the biosimilar over the course of treatment as you would the reference product."  Biosimilar Basics for Patients, U.S. Food & Drug Admin., https://www fda.gov/drugs/biosimilars/biosimilar-basics-patients#:~:text=What%20is%20a%20biosimilar%20medication,differences%20from%20the%20reference%20product.

[3] "Sunshine Cert." refers to the Certification of Rebecca Sunshine.  (Doc. 13.)

(Compl. ¶ 12.) Frisch thereafter worked from home in New Jersey, where she continued to serve the same clients by holding virtual meetings over Zoom. (Frisch Decl. ¶ 12.) Frisch's remote-work arrangement was extended indefinitely when Coherus directed all employees to work from home until further notice "due to actions taken by local governments in response to emerging facts regarding the spread of [COVID-19]." (Compl. ¶ 13.)

On September 2, 2020, Frisch took maternity leave following the birth of her child. (*Id.* ¶ 14.) When Frisch returned to work in February 2021, she continued working from home in New Jersey. (*Id.* ¶¶ 14–15.) Four months later, Coherus directed all employees to receive the first dose of a COVID-19 vaccine by July 19, 2021. (*Id.* ¶ 18.) Failure to comply with this mandate, Coherus warned, would result in termination of employment. (*Id.*) As a nursing mother, Frisch communicated her concerns about receiving the COVID-19 vaccine to Charmi Turner and Rebecca Sunshine, both of whom worked in Coherus's Human Resources department and were based out of California. (*Id.* ¶¶ 19–20; Sunshine Cert. ¶¶ 1, 11.) Sunshine reiterated, however, that Coherus intended to provide separation agreements to all employees who had not been vaccinated by July 19, 2021. (Compl. ¶ 20.)

Still unvaccinated, Frisch received a separation agreement on July 13, 2021, which set her last day of employment as August 15, 2021. (*Id.* ¶ 22.) Frisch subsequently retained counsel, prompting Coherus to rescind the separation agreement and its threat to terminate her employment. (*Id.* ¶ 23.)

On August 10, 2021, Coherus extended the deadline for employees to comply with the vaccine mandate to September 15, 2021. (*Id.* ¶ 24.) The next day, the Centers for Disease Control and Prevention recommended that pregnant and breastfeeding women receive the

COVID-19 vaccine, and four days later, Frisch received the first dose of the Moderna shot. (*Id.* ¶¶ 25–26.)

On September 9, 2021, Frisch requested an accommodation to continue working remotely for the next three months, citing the inability of her newborn child to receive a vaccine and the surge in coronavirus cases. (*Id.* ¶ 27.) On September 16, 2021, Coherus terminated Frisch's employment "on the basis that it was not willing to accommodate her request." (*Id.* ¶ 29.) "Prior to terminating her employment, Coherus never provided [Frisch] with the option of returning to work despite the fact that she complied with Coherus's policy by becoming vaccinated, instead terminating her on the basis of her gender and/or that she requested an accommodation." (*Id.*)

## II. Procedural History

Frisch filed suit against Coherus on August 24, 2022, asserting claims under Title VII and NYCHRL. (Compl.) On October 13, 2022, Coherus filed its motion to dismiss Frisch's NYCHRL claims pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and 12(b)(6) for failure to state a claim. (Doc. 11.) On November 10, 2022, Frisch filed her opposition to Coherus's motion. (Doc. 17.) Coherus filed its reply on November 28, 2022. (Doc. 19.)

## III. Legal Standards

A district court properly dismisses an action under Rule 12(b)(1) if the court "lacks the statutory or constitutional power to adjudicate it." *Garcia v. Lasalle Bank NA.*, No. 16-CV-3485, 2017 WL 253070, at *3 (S.D.N.Y. Jan. 19, 2017) (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015)). "The plaintiff bears the burden of proving subject[-]matter jurisdiction by a preponderance of the evidence." *Aurecchione v.*

*Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (internal quotation marks and alterations omitted); *Ernst v. Gateway Plaza Mgmt. Corp.*, No. 11-CV-1169, 2012 WL 1438347, at *2 (S.D.N.Y. Mar. 14, 2012) ("In deciding jurisdictional issues, the court may rely on affidavits and other evidence outside the pleadings.").

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If a plaintiff has not "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

### IV.  Discussion

Coherus moves to dismiss Frisch's NYCHRL claims on the ground that the alleged discrimination and retaliation occurred outside New York City. To state a claim under

NYCHRL, a non-resident plaintiff, like Frisch, must allege that the "discriminatory conduct had an impact in New York." *Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 289–91 (2010); *see also Pakniat v. Moor*, 145 N.Y.S.3d 30, 31 (2021) ("To avail herself of [the NYCHRL], plaintiff must still satisfy the jurisdictional requirement that the impact of the discrimination was felt in New York City."). The impact test is not satisfied where a plaintiff's contacts with New York City are merely "tangential." *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 182–83 (2d Cir. 2016).

Applying that standard here, I conclude that the allegations in the Complaint are insufficient to support Frisch's NYCHRL claims. Frisch admits that she is now, and was at all times relevant to this lawsuit, a resident of the State of New Jersey, (Frisch Decl. ¶ 3), and that she was working remotely from her home in New Jersey when the alleged discriminatory and retaliatory conduct occurred, (*id.* ¶¶ 11, 23–24). These facts alone are fatal to Frisch's NYCHRL claims. *See Fried v. LVI Servs., Inc.*, No. 10-CV-9308, 2011 WL 4633985, at *13 (S.D.N.Y. Oct. 4, 2011) ("Plaintiff's admission that he worked five days a week out of the Westport Office during the time of the events in question is dispositive."), *aff'd*, 500 F. App'x 39 (2d Cir. 2012). In addition, Frisch was managed by a supervisor in New England, (Sunshine Cert. ¶ 10), and was terminated by an email sent from California to New Jersey, (*id.* ¶ 12). *See Vangas*, 823 F.3d at 183 (dismissing NYCHRL claim where, among other things, the plaintiff "was supervised in Yonkers" and "was terminated in Yonkers"). Moreover, the employees from Coherus's Human Resources department with whom Frisch spoke about receiving the vaccine were all based out of California. (Sunshine Cert. ¶¶ 1, 11.) Because the alleged discriminatory and retaliatory conduct occurred while Frisch worked from home in New Jersey, under the supervision of a manager in New England, for a California-based company, and after

conversations with Human Resource employees in California, Frisch is not entitled to the protections conferred by the NYCHRL.

Frisch's arguments to the contrary are unavailing.  She argues principally that her claims are covered by the NYCHRL because she performed "substantially all of her duties in New York City" before her job transitioned to a remote-work arrangement.  (Doc. 17 at 12.)  In support of this argument, Frisch analogizes this case to *Wexelberg v. Project Brokers LLC*, No. 13-CV-7904, 2014 WL 2624761 (S.D.N.Y. Apr. 28, 2014).  There, the court concluded that an employee whose employment was terminated while working remotely from her home outside of New York City was covered under the NYCHRL because she was working "for the [defendant's] New York office."  *Wexelberg*, 2014 WL 2624761, at *11.  In reaching its conclusion, the *Wexelberg* court found relevant the fact that the plaintiff worked in the New York City office "for the majority of the relevant time," i.e., six of the eleven weeks of his employment.  *Id.*

Here, unlike the plaintiff in *Wexelberg*, Frisch never worked "*for* [a] New York office," *id.*—in fact, Coherus does not have one. (Sunshine Cert. ¶¶ 4–5.)  Although Frisch's job required her to travel to New York City, that was so only for the first five of her twenty-three months of employment.  (Compl. ¶¶ 11, 13, 29.)  Even assuming Frisch would be entitled to NYCHRL protection for the those first five months—and Frisch does not allege that any discriminatory or retaliatory conduct occurred during that period—she has no serious claim to the protections NYCHRL confers for the remaining eighteen months.

After the first five months of her employment, Frisch's regular travel to New York City ended, and she traveled to New York City for work only once.  (Frisch Decl. ¶ 14.)  Such infrequent travel to New York City does not satisfy the impact requirement.  *See Fried*, 2011 WL

7

4633985, at *13 (holding that occasional travel to New York City is not sufficient to satisfy the NYCHRL impact requirement); *Pedroza v. Ralph Lauren Corp.*, No. 19-CV-08639, 2020 WL 4273988, at *3 (S.D.N.Y. July 24, 2020) (concluding that Plaintiff's travel to New York City "twelve times in the last six months of her employment" was not sufficient to prove impact under NYCHRL).

Moreover, when Frisch was working from home, her communications with the subset of her New York City-based clients was entirely virtual.[4] (Frisch Decl. ¶ 12.) These "meager interactions with NYC residents" do not satisfy the impact requirement. *Vangas*, 823 F.3d at 182. "To hold otherwise, such that the NYCHRL would cover employees . . . whose only contacts with NYC are phone conversations with persons in the city, would broaden the statute impermissibly beyond those 'who work in the city.'" *Id.* at 183. Accordingly, Frisch cannot claim the protections afforded by the NYCHRL.[5]

Frisch also makes much of the fact that she continued servicing the same New York City-based clients while she was working from home. However, Frisch's reliance on *Regan v. Benchmark Co. LLC*, No.11-CV-4511, 2012 WL 692056 (S.D.N.Y. Mar. 1, 2012), in support of this argument is misguided. As an initial matter, I share the concern expressed in *Syeed v.*

---

[4] Although Frisch alleges that she "continued to service all of the same [New York City-based] clients during the period of [her] employment that [she] worked remotely," (Frisch Decl. ¶ 12), she does not allege that the persons with whom she spoke during that period were themselves working in New York City—and I do not draw the inference that they were. *See J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (explaining that on a motion to dismiss for lack of subject-matter jurisdiction, a court "must accept as true all material factual allegations in the complaint," but does not "draw inferences from the complaint favorable to plaintiffs"). This missing allegation, however, is not necessary to my ultimate conclusion that Frisch did not feel the impact of the alleged discriminatory and retaliatory conduct in New York City.

[5] Contrary to Frisch's contention, nothing about this conclusion creates the sort of loophole described by the *Wexelberg* court. The *Wexelberg* court recognized that employers could not immunize themselves from liability under the NYCHRL by the "simple stratagem of directing a targeted employee to do his work at home rather than at the New York office where he normally works, and then terminating him a few days or weeks later." *Wexelberg*, 2014 WL 2624761, at *11. Because Frisch was fired eighteen months after she was directed to work from home—a direction that was given to the entire company because of the COVID-19 pandemic—my conclusion here in no way facilitates the exploitation of "the exact loophole that the court in *Wexelberg* cautioned against." (Doc. 17 at 22.)

*Bloomberg L.P.*, 568 F. Supp. 3d 314 (S.D.N.Y. 2021), regarding the "legitimacy of *Regan*'s analysis" given its "lack of reliance on post-*Hoffman* decisions." 568 F. Supp. 3d at 321. This concern aside, the *Regan* court's conclusion that NYCHRL applied to the plaintiff's claims was based on its finding that the plaintiff experienced discrimination while she worked in the defendant's New York Office. *See Regan*, 2012 WL 692056, *14 (observing that the plaintiff's transfer to New Jersey was "the culmination of a number of alleged discriminatory acts that took place at [the defendant's] New York City office while [the plaintiff] worked there"). The *Regan* court also found it relevant that the plaintiff remained under the management and supervision of the New York City office even while she worked from New Jersey. *Id.* Here, however, the alleged discriminatory and retaliatory conduct took place while Frisch was working from home in New Jersey under the supervision of an individual in New England and after she spoke with Human Resources employees in California. Based on these allegations, Frisch's NYCHRL claims must be DISMISSED.

## V.     Conclusion

For these reasons, Coherus's partial motion to dismiss is GRANTED, and Frisch's NYCHRL claims are DISMISSED. Coherus is directed to file an answer by April 5, 2024.

The Clerk of Court is respectfully directed to terminate the motion pending at Doc. 11.

SO ORDERED.

Dated: March 28, 2024
    New York, New York

_____
Vernon S. Broderick
United States District Judge